*Garcia v. Regal Cinemas, Inc. v. One-Stop Personnel Services, LLP, et. al.*
Case No. 17-cv-22512-CIV-MGC

# Exhibit A

## INDEPENDENT CONTRACTOR AGREEMENT

Regal Cinemas, Inc. ("Regal") and One-Stop Personnel Services, LLP, ("Contractor") hereby enter into this Independent Contractor Agreement (the "Agreement") upon the following terms and conditions:

I.     Performance of Services.

1.1    Contractor represents that Contractor is a specialist in the field of janitorial services and is in the business of providing services in that field to the general public and other businesses.

1.2    Contractor agrees to perform services as described on the attached Schedule A's (the "Theatre Specific Services") for the Regal Theatres described on the attached Schedule B (the "Theatres"). During the term of this Agreement, the parties can mutually agree, in writing, to voluntarily add theatres to schedule B and all such theatres will be subject to the terms and conditions of this Agreement, regardless of when added, unless or until terminated in accord with Section 2 herein.

1.3    Contractor warrants that Contractor has the necessary expertise and equipment, and all licenses required, if any, to perform the Services as specified for each covered theatre as set forth in Schedule A. Contractor further represents that it will use the cleaning supplies, excluding necessary equipment and personnel which are to be supplied solely by Contractor, available at each Facility to perform their services.

1.4    Contractor warrants that neither the fact that Contractor is entering into this Agreement nor Contractor's performance of the Services will breach or violate any other agreement to which Contractor is a party.

1.5    Regal and Contractor agree that while Contractor is performing the Services for Regal, Contractor is or may also perform services for other persons, businesses or entities.

1.6    Although the results of the Services must be satisfactory to Regal and completed in a timely manner, Contractor shall have sole control of the means, methods and manner of performing the work.

1.7    Contractor shall not act as, or represent itself to be an agent, employee or representative of Regal.

1.8    Contractor agrees that Regal shall not incur any obligation or liability to any third party as a result of Contractor performing the Services.

1.9    Contractor acknowledges that Contractor is not authorized to supervise or otherwise direct and control any of Regal's employees. Regal acknowledges that Regal is not authorized to supervise or otherwise direct and control any of Contractor's employees.

1.10   Contractor shall have the discretion to utilize Contractor's own employees, agents, and/or subcontractors to perform the Services. Contractor agrees that Contractor shall be solely responsible for hiring, supervising, insuring and paying any such employees, agents and/or



1 of 5

260716.1

subcontractors. Contractor agrees to make every reasonable effort to ensure the suitability of all employees, agents or subcontractors performing services under this Agreement.

1.11    Contractor represents that it has taken effective efforts to verify references and conduct criminal record background checks on all employees, agents and required any subcontractors to verify that they have taken effective efforts to verify references and conduct criminal record background checks on all its employees and agents that will be performing services at Regal's facilities

1.12    Contractor represents that Contractor will treat its employees, agents, subcontractors and/or agents in accordance with all federal, state and local laws. To the extent that Contractor contracts with subcontractors and/or agents, it represents that these subcontractors and/or agents will likewise comply with all federal, state and local laws.

1.13    Contractor represents that Contractor has obtained appropriate insurance coverage to cover any acts or omissions committed by Contractor or any of Contractor's representatives during the performance of the Services. Contractor agrees to furnish Regal with proof of such insurance coverage prior to the beginning of work.

1.14    Contractor represents and warrants that all of its employees, including those of any of its subcontractors, and specifically any and all personnel that perform any of the services required under the terms and conditions of this Agreement, have been verified by either compliance with the applicable employment eligibility provisions of the Immigration Reform and Control Act of 1986, as amended, and specifically the employment eligibility verification procedures and documentation collection and retention provisions contained therein, or by use of the federal government's e-verify system, consistent with the standards and conditions associated therewith.

II.    <u>Termination of Services.</u>

2.1    Either Party may terminate this Agreement following 30 days written notice of termination ("Notice of Termination") to the other party in the event of any material breach of the terms of this Agreement and failure to cure by the breaching Party. The Notice of Termination, shall provide written notice of the breach by specifying the nature of same and identifying the Theatre location(s) where the breach occurred. Upon receipt of such Notice of termination, the breaching party shall have fourteen days to cure the breach. If the breach is limited to a specific Theatre not affecting or involving the other Theatres subject to this Agreement, then the termination shall only apply to the affected Theatre(s).

2.2    Notwithstanding section 2.1 above, Regal may terminate this agreement immediately for some or all of the theatres covered by this Agreement, upon written notice without giving the Contractor a Notice of Breach or an opportunity to cure, if at any time it receives information which reasonably demonstrates that the Contractor, or any of its subcontractors or employees is engaged in actual, claimed or alleged non-compliance with any other Federal, State or Local laws or ordinances, including, but not limited to, those related to non-payment of wages, employment of individuals that are not eligible to be employed within the United States or illegal employment of minors.

260716.1



2.3     If this Agreement is not otherwise terminated, then this Agreement shall terminate upon the one year anniversary date of the earliest date of execution of the Agreement by the parties, unless mutually agreed to be extended, regardless of the date upon which a Theatre was added to Schedule B. However, any such extension will apply only to the specific theatres identified on Schedule B as adopted or amended at the time of any such extension.

2.4     Contractor agrees that regardless of the reason for or timing of the termination of the Services, Contractor will, as soon as possible following such termination and within at least 30 days after such termination, provide to Regal thorough written documentation of any amounts it claims it is owed by Regal and Regal shall within 30 days of its receipt of such Notice remit to Contractor any amounts owed to Contractor along with written explanation of the reasons for any amounts withheld.

## III.    Compensation for Services.

3.1     Regal agrees that as long as Contractor maintains its recurring vendor form with Regal, Contractor will be paid the amounts set forth on Schedule B for each Theatre for which services are being performed, including any Theatres added to Schedule B by mutual agreement of the Parties. As long as Contractor maintains its recurring vendor form with Regal payments will be made on a weekly basis or, if invoices are issued to Regal, within thirty (30) days of Regal's receipt of an invoice from Contractor. Contractor represents that this amount includes its own computation of the amount necessary for Contractor to cover its business expenses including, but not limited to, provision of workers compensation insurance coverage as necessary and payment of Federal, State or local minimum wages and overtime to all of its personnel, or its agents and subcontractors' personnel, if applicable, performing services under this Agreement. The Parties agree that Contractor may adjust its billing rates for one or more of the Theatres serviced under this Agreement by giving Regal thirty (30) days written "Notice of Rate Increase" directly to the District Manager that covers the theatre in which a rate change is sought, which shall specify the amount of the rate increase and the Theatre(s) for which the rate increase shall apply. Regal may reject the rate increase by giving Contractor written notice of its "Rejection of Rate Increase" within fourteen (14) days of its receipt of Contractor's Notice of Rate Increase, otherwise the rate increase shall be deemed accepted by Regal. If Regal rejects Contractor's proposed Rate increase, then Contractor shall have the option to terminate this Agreement with respect to each Theatre for which the requested rate increase was rejected by so notifying Regal in writing within fourteen (14) days of Contractor's receipt of the Rejection of Rate Increase from Regal. If Contractor terminates this Agreement with respect to any Theatre(s) based on Regal's Rejection of Rate Increase, Contractor will nevertheless continue to service the Theatre(s) at issue at the existing rate until such time as Regal retains a substitute contractor, but no longer than a period of thirty days from the date that notice of termination is given.

3.2     Contractor understands and agrees that Contractor is not entitled to any form of compensation other than that specified in paragraph 3.1 above. Contractor and its employees, agents and subcontractors are not eligible for any employment-related benefits that Regal provides to Regal's own employees including, but not limited to, vacation time, vacation pay, sick leave, retirement benefits, health or life insurance, social security benefits or disability insurance. Contractor and its employees, agents and subcontractors hereby waive any claim to any such benefit even in the event Contractor and/or its employees, agents, or subcontractors are

260716.1

3 of 5



subsequently judicially determined to have been employees of Regal. Contractor and its employees, agents, and subcontractors hereby acknowledge that the amount of compensation specified in paragraph 3.1 above reflects the total amount Regal is obligated to pay and the fact that Contractor and/or its employees, agents, or subcontractors shall not receive any other form of compensation from Regal. Furthermore, Contractor understands and agrees that Regal will not reimburse Contractor for any of Contractor's expenses, including but not limited to, payment of wages to its agents, employees or its sub contractors employees, insurance, meals, transportation, and lodging.

3.3 Contractor acknowledges that because of Contractor's independent contractor relationship with Regal, Regal is not responsible for the provision of workers' compensation insurance for Contractor, the payment of unemployment insurance taxes, the withholding of federal, state, or local taxes, or the payment of social security taxes or any other employment-related tax or contribution as to Contractor's employees, agents, or subcontractors. Consequently, Contractor shall not file any claim for workers' compensation benefits or unemployment benefits stemming from Contractor's performance of the Services. Contractor shall be independently and solely responsible for payment and/or withholding of any federal, state, or local income or payroll taxes pertaining to the compensation specified in the attached Schedule A.

IV. **Indemnification.**

4.1 Contractor, at its sole expense, shall indemnify, defend, and hold Regal, its affiliates, agents, and employees, harmless against all liability or loss, all costs, fees, and penalties, and against all claims or actions including, but not limited to, claims of federal or state wage-and-hour violations, damage or loss of property, injury or death of persons, unemployment benefits, or workers' compensation benefits arising out of (1) the acts or omissions of the Contractor, its employees, agents, or subcontractors in connection with the Contractor's services pursuant to this Agreement, (2) any breach of its representations or warranties contained in this Agreement, or (3) any breach of its obligations pursuant to this Agreement. Contractor shall reimburse Regal for any and all reasonable legal expenses incurred in connection with this provision.

V. **Resolution of Disputes.**

5.1 Any dispute regarding any aspect of this Agreement or any act, which allegedly has or would violate any provision of this Agreement ("Arbitrable Dispute"), will be submitted to arbitration in Tennessee before an experienced arbitrator licensed to practice law in Tennessee and selected in accordance with the rules of the American Arbitration Association, as the exclusive remedy for such claim or dispute.

5.2 Should Regal or Contractor pursue any Arbitrable Dispute by any method other than said arbitration, the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorneys' fees incurred as a result of such action.

5.3 Regal and Contractor agree that if arbitration is brought alleging a breach of this Agreement, the prevailing party shall be entitled to recover all costs and expenses incurred in that action, including attorneys' fees.



VI. **Miscellaneous.**

6.1 This Agreement shall not be assigned by Regal or Contractor.

6.2 This Agreement constitutes the sole and entire existing agreement between the parties, and completely and correctly expresses all of the rights and obligations of the parties. All prior agreements, conditions, practices, customs, usages, and obligations are completely superseded and revoked, insofar as any such prior agreement, condition, practice, custom, usage, or obligation might have given rise to any enforceable right.

6.3 The waiver in any particular instance or series of instances of any term or condition of this Agreement or any breach hereof by any party shall not constitute a waiver of such term or condition or any breach thereof in any other instance.

6.4 This Agreement is subject to amendment only as set forth herein and/or by subsequent written agreement between, and executed by, the parties hereto. Commencement or continuation of any custom, practice, or usage by the parties shall not constitute an amendment hereof or otherwise give rise to enforceable rights or create obligations of either of the parties.

6.5 If any one or more provisions in this Agreement shall for any reason be held to be invalid, illegal, void, or unenforceable, the same shall not affect any other provision of this Agreement, but this Agreement shall be construed as if such invalid, illegal, void, or unenforceable provision had never been contained herein.

6.6 This Agreement shall be construed and interpreted in accordance with the laws of the state of Tennessee.

6.7 This Agreement and Schedules A and B may be executed in one or more duplicates or counterparts, any one of which shall be deemed to be the original even if the others are not produced.

6.8 Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

Dated: 4/15/2015      _____/President

Contractor

Dated: 15 MAY 15      _____

(Insert name)

For Regal Cinemas, Inc.

260716.1

## Schedule A "Services"

This list encompasses all areas of the theatre and each location should confirm with Janitorial Management all tasks to be completed as some items may be the responsibility of the landlord or theatre personnel. All work must be completed a minimum of one hour prior to opening the doors. A monthly quality inspection walk through by the Janitorial supervisor is required. Communications shall only be made between Theatre management and the assigned Janitorial supervisor or owner.

| Check one that applies/ note any exceptions |
|---|
| N/A - Janitorial company provides their own equipment |
| X - REG provides cleaning chemicals, mops, mop buckets, and stock supplies |

### Exterior

| Task | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Sweep concrete walkways in front of box office | ✓ | | | | | |
| Empty ash trays / urns | ✓ | | | | | |
| Clean exterior glass up to 8' | | ✓ | | | | |
| Clean doors and handles | ✓ | | | | | |
| Clean / sweep compactor area | ✓ | | | | | |
| Clean soda spills on sidewalk | ✓ | | | | | |
| Clean inside & outside windows up to 8' feet | ✓ | | | | | |
| Rinse out large rolling trash bins | ✓ | | | | | |
| Dust high ledges up to 8' | | ✓ | | | | |

### Interior Entrance & Exit Vestibules

| Task | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Clean interior glass | ✓ | | | | | |
| Clean doors and handles | ✓ | | | | | |
| Clean and mop tiled floor areas | ✓ | | | | | |
| Empty trash cans and replace liners | ✓ | | | | | |
| Upper wall dusting up to 8' | | ✓ | | | | |
| Upper door frame dusting | ✓ | | | | | |
| Clean inside and outside windows up to 8' feet | ✓ | | | | | |



### Lobby Area

| | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Empty trash cans and replace liners | ✓ | | | | | |
| Clean trash can lids | ✓ | | | | | |
| Clean all payphones, lobby benches, vending machines | ✓ | | | | | |
| Mop all tiled floor | ✓ | | | | | |
| Vacuum all carpet | ✓ | | | | | |
| Remove gum/candy from tile/carpet | ✓ | | | | | |
| Clean drinking fountains | ✓ | | | | | |
| Sweep/mop/vacuum elevators and/or escalators | | ✓ | | | | |
| Upper wall dusting up to 8' | | ✓ | | | | |
| Upper wall fixture dusting up to 8' | | ✓ | | | | |

### Arcade Area

| | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Clean and mop tiled floor areas | ✓ | | | | | |
| Empty trash and replace liners | ✓ | | | | | |
| Clean trash can lids | ✓ | | | | | |
| Remove gum/candy from tile/carpet | ✓ | | | | | |
| Dust video games | ✓ | | | | | |

### Hallway Areas

| | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Empty trash cans and replace liners | ✓ | | | | | |
| Clean trash can lids | ✓ | | | | | |
| Vacuum all carpet and sweep/mop tile floors | ✓ | | | | | |
| Remove gum/candy from tile/carpet | ✓ | | | | | |
| Clean Auditorium doors, glass and handles (inside and out) | ✓ | | | | | |
| Upper wall dusting | | ✓ | | | | |
| Upper wall fixture dusting | | ✓ | | | | |
| Upper door frame dusting | | ✓ | | | | |
| Clean vinyl cove base | | | ✓ | | | |



| Auditorium Areas | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Sweep and mop floors (also under and behind seats) | ✓ | | | | | |
| Remove gum/candy from carpet/tile | ✓ | | | | | |
| Clean wood trim and wall cap | ✓ | | | | | |
| Sweep/mop under the screens | ✓ | | | | | |
| Empty trash cans and replace liners | ✓ | | | | | |
| Clean trash can lids or enclosure top | ✓ | | | | | |
| Vacuum all carpeting including steps | ✓ | | | | | |
| Remove any debris form seating area & return booster seats to their stand | ✓ | | | | | |
| Clean exit doors and panic bars (dust free.) | ✓ | | | | | |
| Wash out trash can liners | | ✓ | | | | |
| Vacuum all wall-carpeting | | ✓ | | | | |
| Remove dust from lower wall carpet | | ✓ | | | | |
| Remove and keep maintained any buildup from around the seat standards | ✓ | | | | | |

| Restrooms | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Sweep/mop entrance tiles | ✓ | | | | | |
| Clean wooden doors and handles | ✓ | | | | | |
| Sweep/mop tiled floors | ✓ | | | | | |
| Empty trash cans and replace liners | ✓ | | | | | |
| Unclog toilets (as needed) | ✓ | | | | | |
| Clean trash can lids | ✓ | | | | | |
| Clean mirror(s) | ✓ | | | | | |
| Clean countertops | ✓ | | | | | |
| Clean/polish sinks and fixtures | ✓ | | | | | |

### Restrooms Continued

| | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Clean partitions and remove graffiti as needed | ✓ | | | | | |
| Clean toilets & urinals and all fixtures | ✓ | | | | | |
| Clean/polish toilet tissue dispensers | ✓ | | | | | |
| Clean hand dryers and/or paper towel dispensers | ✓ | | | | | |
| Restock soap | ✓ | | | | | |
| Restock toilet tissue, seat liners, sanitary napkins and paper towel dispensers | ✓ | | | | | |
| Clean walls as needed | ✓ | | | | | |
| Clean sanitary napkins holders | ✓ | | | | | |
| Clean baby changing stations | ✓ | | | | | |
| Remove any dry wads form ceiling - remove residue | ✓ | | | | | |
| Clean entire tiled surface | ✓ | | | | | |
| Upper wall fixture dusting | ✓ | | | | | |

### Janitorial closets

| | Daily | Weekly | Monthly | Quarterly | Yearly | N/A |
|---|---|---|---|---|---|---|
| Organize / restock | ✓ | | | | | |
| To be kept clean and kept in an orderly manner | ✓ | | | | | |
| Rinse/clean drain area | ✓ | | | | | |
| Hang mops to dry - Do not leave in mop bucket filled with water | ✓ | | | | | |
| Replace vacuum cleaner filter bags and replace belts as needed | ○ | | | | | |
| Clean beater brush on vacuum cleaner | | ✓ | | | | |

Contractor Signature & Date _(signature)_ 4/15/2015

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 6/18/2015

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| | |
|---|---|
| **PRODUCER**<br>MHBT Inc.<br>8144 Walnut Hill Lane, 16th Fl<br>Dallas TX 75231 | **CONTACT NAME:** Heather Jones<br>**PHONE (A/C, No, Ext):** 972-770-1600 **FAX (A/C, No):**<br>**E-MAIL ADDRESS:** Heather_Jones@mhbt.com |

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : Travelers Indemnity Co of America | 25666 |
| INSURER B : Travelers Prop Cas Co of Amer | 25674 |
| INSURER C : Travelers Indemnity Co of Connectic | 25682 |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

**INSURED**
One Stop Personnel Services, LLP    ONESTO
9555 Lebanon Rd Bldg #1
Frisco TX 75035

## COVERAGES    CERTIFICATE NUMBER: 256845440    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR | | | 6604E733145 | 5/28/2015 | 5/28/2016 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>POLICY PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>ALL OWNED AUTOS   SCHEDULED AUTOS<br>X HIRED AUTOS X NON-OWNED AUTOS | | | BA4E733145 | 5/28/2015 | 5/28/2016 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB   OCCUR<br>EXCESS LIAB   CLAIMS-MADE<br>DED X RETENTION $10,000 | | | CUP4E733145 | 5/28/2015 | 5/28/2016 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | AGGREGATE | $1,000,000 |
| | | | | | | | | $ |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | UB4E733145 | 5/28/2015 | 5/28/2016 | WC STATU-TORY LIMITS   OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Blanket Additional Insured Form #CG D4 67 Edition 12/08 applies to the General Liability Policy
Blanket Waiver of Subrogation form #CG D4 67 Edition 12/08 applies to the General Liability Policy
Blanket Waiver of Subrogation Form #WC 42 03 04 (A) applies to the Workers' Compensation Policy for the state of Utah
Blanket Waiver of Subrogation Form #WC 00 03 13 (00) applies to the Workers' Compensation Policy for all other states except Kentucky*
*No Waiver of Subrogation applies in the state of Kentucky
See Attached...

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Regal Entertainment Group<br>7132 Regal Ln.<br>Knoxville TN 37918 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>**AUTHORIZED REPRESENTATIVE**<br>*[signature]* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD